UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| ASSOCIATION CONCERNED OVER RESOURCES AND NATURE, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No. _____ |
| TENNESSEE ALUMINUM PROCESSORS, INC., | ) ) ) ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Association Concerned Over Resources and Nature, Inc., by and through counsel, allege as follows:

### NATURE OF THE CASE

1. This is a citizen's suit, brought pursuant to the provisions of Section 505(a)(1) of the federal Clean Water Act (hereinafter "CWA"), as amended, 33 U.S.C. § 1365(a)(1), and Section 7002(a)(1)(A) of the federal Resource Conservation and Recovery Act (hereinafter "RCRA"), 42 U.S.C. § 6972(a)(1)(A), to address violations of the CWA and RCRA by Defendant Tennessee Aluminum Processors, Inc. ("TAP") arising out of TAP's improper disposal of aluminum slag waste at the TAP facility located in Mount Pleasant, Maury County, Tennessee. More specifically, since at least 1989, TAP has maintained a stockpile of aluminum slag waste ("slag waste stockpile") at the TAP facility, which waste contains, amongst other constituents, aluminum, ammonia, and chlorides. The maintenance of the slag waste stockpile at the TAP facility constitutes the operation of an open dump, which is prohibited by, and

constitutes repeated and ongoing violations of, RCRA and its implementing regulations. Furthermore, the maintenance of the slag waste stockpile by TAP has resulted in the repeated and ongoing discharge of pollutants, including leachate containing ammonia and chlorides, from the stockpile, to an unnamed tributary of Quality Creek in violation of 33 U.S.C. 1311(a) and TAP's National Pollutant Discharge Elimination System ("NPDES") Permit issued pursuant to 33 U.S.C. § 1342. This repeated and ongoing discharge of leachate has also resulted in the introduction of industrial wastewater into the city of Mount Pleasant's sewerage system in violation of 33 U.S.C. § 1311(a), 33 U.S.C. § 1317, and federal and state pretreatment requirements. Plaintiff seeks a declaratory judgment, injunctive relief, the imposition of civil penalties, and the award of costs, including attorney and expert witness fees, for Defendant TAP's repeated and ongoing violations of the CWA and RCRA.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over the CWA claims set forth in this Complaint pursuant to Section 505(a) of the CWA, 33 U.S.C. § 1365(a), and 28 U.S.C. § 1331. Venue is also appropriate in the Middle District of Tennessee, pursuant to Section 505(c) of the CWA, 33 U.S.C. § 1365(c), because the source of the violations is located within this judicial district.

3. This Court has subject matter jurisdiction over the RCRA claims set forth in this Complaint pursuant to Section 7002(a)(1)(A) of RCRA, 42 U.S.C. § 6972(a)(1)(A), and 28 U.S.C. § 1331. Venue is also appropriate in the Middle District of Tennessee, pursuant to Section 7002(a) of RCRA, 42 U.S.C. § 6972(a), because the violations complained of herein have and continue to occur within this judicial district.

4. Plaintiff has complied with the pre-suit notice provisions of the CWA. Pursuant to Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Plaintiff, on June 2, 2010 mailed a notice of intent to file suit under the CWA to address the violations at the TAP facility to Defendant TAP, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Director of the Tennessee Department of Environment and Conservation ("TDEC"), and the United States Attorney General ("June Notice"). [Attached hereto as Exhibit "A" and incorporated by reference herein.] The June notice complied with 33 U.S.C. § 1365(b)(1)(A) and with 40 C.F.R. Part 135, Subpart A. More than 60 days have passed since the June Notice was served on Defendant and these agencies.

5. Plaintiff has complied with the pre-suit notice provisions of the RCRA. Pursuant to Section 7002(b)(1)(A) of the RCRA, 42 U.S.C. § 6972(b)(1)(A), Plaintiff on June 2, 2010 mailed a notice of intent to file suit under the RCRA to address the violations at the TAP facility to Defendant TAP, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, the Director of the Tennessee Department of Environment and Conservation ("TDEC"), and the United States Attorney General ("June Notice"). Attached hereto as Exhibit "A" and incorporated by reference herein. More than 60 days have passed since the June notice was served on Defendant and these agencies.

6. Neither EPA nor TDEC has commenced nor are they diligently prosecuting a civil or criminal action in a court of the United States to redress the violations of the CWA or the RCRA by TAP. In addition, neither EPA nor TDEC has commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or under a comparable Tennessee law, to redress the violations of the CWA by TAP.

3

7. Plaintiffs will, immediately upon receipt of a file stamped copy of this Complaint, mail a copy of this Complaint to the Administrator of the Environmental Protection Agency, the Regional Administrator of the EPA Region in which the violations are alleged to have occurred, and the Attorney General of the United States.

## PARTIES

8. Plaintiff Association Concerned Over Resources and Nature, Inc. ("ACORN") is a nonprofit corporation organized under the laws of Tennessee with its principal office in Columbia, Tennessee. ACORN was organized in or about 2000 to, among other reasons: educate the public about the threats to the environment and public health in Mount Pleasant, Tennessee; to advocate for reduction in water pollution and air pollution in Mount Pleasant; educate the public about land use decisions and their impacts on the environment, public health, community character and property values in Mount Pleasant; and advocate for more sustainable land use decisions in Mount Pleasant. ACORN has members who own property and reside on or near the TAP facility, as well as Quality Creek, in Maury County, Tennessee, as well as members who own property and reside downstream of the TAP facility. Members of ACORN also fish and recreate in Quality Creek, the Duck River, and other waters downstream from the TAP facility. Members of ACORN have been and will be directly and substantially injured in their use and enjoyment of their property and in their recreational and aesthetic enjoyment of Quality Creek and downstream waters as a direct result of TAP's violations of the CWA and RCRA. The relief sought in this case would provide redress for these injuries. Additionally, because these injuries are being caused by pollution of waters of the United States and/or the improper storage of hazardous waste, the injuries fall within the zone of interests protected by the CWA and RCRA.

9. Plaintiff ACORN is a "citizen" within the meaning of 33 U.S.C. §§ 1365(g) and 1365(a).

10. Defendant TAP is a for-profit corporation organized under the laws of the State of Tennessee with its principal office in Mount Pleasant, Tennessee. The principal address of TAP is 7207 Hoover Mason Road, Mount Pleasant, TN, 38474. The registered agent for service of process is Jerry W. Sweeney, 7207 Hoover Mason Road, Mount Pleasant, TN, 38474.

11. Defendant TAP is a "person" within the meaning of 33 U.S.C. §§ 1362(5) and 1365(a)(1).

## STATUTORY BACKGROUND

### Clean Water Act

12. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source into waters of the United States unless the discharge is in compliance with various enumerated sections of the CWA. Among other things, Section 301(a) prohibits such discharges not authorized by, or in violation of the terms of, a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Section 301(a) also prohibits discharges that are not in compliance with the requirements of Section 307 of the CWA, 33 U.S.C. § 1317.

13. Section 307(b) through (e) of the CWA, 33 U.S.C. § 1317(b) through (e), establish the federal pretreatment program for regulation of discharges from industrial facilities into publicly owned treatment works ("POTW" or "wastewater facility"). Section 307(d) of the Act, 33 U.S.C. § 1317(d), prohibits the operation of any source of discharge of pollutants into a publicly owned treatment works in violation of prohibitions on discharges or pretreatment standards or effluent standards.

5

14. EPA has adopted pretreatment standards for industrial dischargers to treatment works at 40 C.F.R. Parts 403 through 471, including both general regulations and categorical regulations for specific industrial categories.

15. The State of Tennessee has been delegated the authority to implement the permitting programs of the Act by EPA, including the NPDES permit program and the pretreatment program for discharges into wastewater facilities, pursuant to 33 U.S.C. § 1342(b).

16. TDEC is the water pollution control agency for purposes of the Act, and has drafted regulations pursuant to that authority implementing the Act's permitting programs within the State of Tennessee. *See* Tenn. Code Ann. § 69-3-105(h)(1).

17. TDEC has established a program for pretreatment permitting activities, under the Rules and Regulations of the State of Tennessee Chapter 1200-4-14. Among other things, the regulations describe pollutants that may not be introduced to a wastewater facility (hereinafter "WWF").

18. The general Industrial Pretreatment rules apply "[T]o pollutants from non-domestic sources covered by Pretreatment Standards which are indirectly discharged into or transported by truck or rail or otherwise introduced into POTW's .... 40 C.F.R. § 403.1(b); *see also* Tenn. Comp. R. & Regs. R. 1200-4-14-.01(2)(a).

19. Tenn. Code Ann. §69-3-125(a)(1)(C) makes it illegal to fail to complete a filing requirement of a pretreatment program.

20. Both the EPA and TDEC rules prohibit the discharge into a POTW [WWF] of "... any pollutant(s) which cause Pass Through or Interference ....", and make such discharge a violation of the CWA. 40 C.F.R. § 403.5(a); Tenn. Comp. R. & Regs. R. 1200-4-14-.05(1)(a).

6

21. A violation of an NPDES permit issued by TDEC is a violation of the Tennessee Water Quality Control Act of 1977, Tenn. Code Ann. §§ 69-3-101, *et seq.*, TDEC rules, including Chapter 1200-4-5, and the federal Clean Water Act.

22. A citizen suit, pursuant to 33 U.S.C. § 1365(a)(1), may be brought for violations of the terms of NPDES permits and for violations of pretreatment standards under Section 307 of the CWA. 33 U.S.C. § 1365(f).

### Resource Conservation and Recovery Act

23. 42 U.S.C. § 6903(14) defines the term "open dump" as:

> ... any facility or site where solid waste is disposed of which is not a sanitary landfill which meets the criteria promulgated under Section 6944 of this title and which is not a facility for disposal of hazardous waste.

24. Section 4005(a) of the Resource Conservation and Recovery Act, 42 U.S.C. § 6945(a), prohibits the operation of an open dump for land disposal of solid waste.

25. The term "open dump" is defined by EPA in 40 C.F.R. Part 257 to include any facility which causes a discharge of pollutants into waters of the United States in violation of the requirements of the National Pollutant Discharge Elimination System under Section 402 of the Clean Water Act, 33 U.S.C. § 1342, or which contaminates an underground drinking water source beyond the solid waste boundary or fails to be in full and timely compliance with a corrective action program to adequately respond to contamination threatening human health or the environment. *See* 40 C.F.R. Part 257.

26. Violations of the open dumping provisions can be addressed in a federal citizen suit under 42 U.S.C. § 6972(a)(1)(A), as provided in 42 U.S.C. § 6945(a).

### GENERAL ALLEGATIONS

27. At all time relevant hereto, Defendant TAP has operated an aluminum processing/smelting facility in Mount Pleasant, Maury County, Tennessee ("TAP facility"). In or about 1983, TAP began disposing of the aluminum dross waste left over after processing in a

7

pile at the TAP facility ("slag waste stockpile"). TAP's practice of maintaining the slag waste stockpile continues to the present.

28. By late December 1991, TAP had stored approximately 125,000 cubic yards of slag waste in the slag waste stockpile. Moreover, despite repeated requests and orders issued by TDEC to TAP demanding that TAP remove all of the slag waste in the stockpile from the TAP facility, a 2001 survey found that the slag waste stockpile still contained 118,750 cubic yards of slag waste.

29. The solid waste in the slag waste stockpile contains, amongst other constituents, aluminum, ammonia, chlorides, lead and manganese. Ammonia and chlorides are "pollutants" within the meaning on the CWA.

30. Since at least 1989, TAP has discharged, and continues to discharge, leachate from the slag waste stockpile containing pollutants through discrete conveyances to surface water, including but not limited to an unnamed tributary to Quality Creek. These discharges of contaminated leachate are continuing and will continue into the future.

31. Sampling of the stockpile leachate discharge conducted on January 22, 2010, found 1300 mg/l of ammonia in the discharge. Furthermore, sampling of the stockpile leachate discharge conducted on March 25, 2010 found 1200 mg/l of ammonia in the discharge, as well as 33,000 mg/l of chloride.

32. TAP is covered under the NPDES Tennessee Storm Water Multi-Sector General Permit for Industrial Activities, Permit No. TNR050000, and is registered under Tracking No. TNR053682. Part 3.1.1 of this Permit prohibits the discharge of any material other than stormwater.

33. The unnamed tributary to Quality Creek, as well as Quality Creek, are waters of the State of Tennessee, and "waters of the United States" as that term is used in the CWA and as it has been interpreted by the federal courts. Quality Creek and the unnamed tributary to Quality

8

Creek, are designated by the State of Tennessee for use as domestic water supply, industrial water supply, fish and aquatic life, and recreation, amongst other designated uses.

34. The unnamed tributary to Quality Creek and Quality Creek are continuously flowing streams forming geographic features depicted on official topographical maps.

35. The discharge of pollutants into the unnamed tributary to Quality Creek can significantly affect the chemical, physical, and biological integrity of navigable in fact waters downstream.

36. The general Industrial Pretreatment Rules apply to pollutants indirectly discharged from the TAP facility into City of Mount Pleasant's publicly owned treatment works ("POTW").

37. Since at least January 2010, contaminated leachate has been discharged from the slag waste stockpile located at the TAP facility into the City of Mount Pleasant's POTW as a result of ground water contamination. TAP has never applied for and obtained a pretreatment permit from the City of Mount Pleasant pretreatment program which would authorize such discharge to the City's POTW.

38. Due to the high levels of ammonia contained in the leachate, the discharge of the contaminated leachate into the City of Mount Pleasant's POTW has caused Pass Through or Interference with the Mount Pleasant POTW on at least the following dates: January 21, 2010; February 4, 2010; and February 5, 2010.

39. The high levels of ammonia contained in the leachate have caused or contributed, and continue to cause or contribute, to ammonia effluent limit violations of the City of Mount Pleasant's NPDES Permit, Permit No. TN0020800.

40. In 2003, TDEC found that TAP was in violation of the Tennessee Solid Waste Disposal Act ("TSWDA") due to its acts in constructing, operating, and maintaining a solid waste disposal site, *i.e.*, the slag waste stockpile at the TAP facility, without a permit.

41. As discussed above, since at least 1989, the slag waste stockpile at the TAP facility has discharged and is discharging contaminated leachate containing ammonia and chlorides into surface waters through discrete conveyances.

42. The contaminated leachate from the slag waste stockpile located at the TAP facility has contaminated an underground drinking water source outside of the solid waste boundary.

43. Upon information and belief, the violations of the CWA and RCRA by Defendant TAP listed in the June Notice attached hereto as Exhibit "A" and incorporated by reference are continuing and ongoing, or are likely to recur, as of the date this Complaint is being filed.

## COUNT 1: DISCHARGING POLLUTANTS TO SURFACE WATERS WITHOUT AN NPDES PERMIT IN VIOLATION OF THE CLEAN WATER ACT

44. Paragraphs 1 - 43 of this Complaint are hereby realleged and incorporated by reference herein.

45. Defendant TAP's discharge of contaminated leachate from the slag waste stockpile located at the TAP facility through discrete conveyances constitute discharges from a point source into an unnamed tributary of Quality Creek requiring an NPDES permit authorizing such discharges.

46. Since at least 1989, and on the specific occasions lists in Paragraph 31, TAP has violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging contaminated leachate from the slag waste stockpile into an unnamed tributary of Quality Creek without an NPDES permit authorizing such discharges.

47. Defendant TAP should be subject to an injunction ordering TAP to cease its discharges of pollutants without an NPDES permit authorizing such discharges.

48. Defendant TAP should be subject to the assessment of civil penalties for these violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d) and 1365.

49. For the purpose of assessing the maximum penalty which Defendant TAP is liable, each day that TAP has discharged pollutants without a permit authorizing such discharges constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d), for each day on which it has occurred or will occur after the filing of this Complaint.

## COUNT 2: VIOLATION OF THE TERMS OF NPDES PERMIT NO. TNR 050000 AND TNR 053682 IN VIOLATION OF THE CLEAN WATER ACT

50. Paragraphs 1-49 of this Complaint are hereby realleged and incorporated by reference herein.

51. Section 3.1.1 of TAP's NPDES Permit states that "[A]ll discharges covered by this Permit shall be composed entirely of stormwater."

52. Since at least 1989, TAP has been discharging contaminated leachate from the slag waste stockpile at the TAP facility to an unnamed tributary of Quality Creek.

53. Defendant TAP has violated and is violating Section 3.1.1 of its NPDES Permit, and thus Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342, by discharging unauthorized materials other than stormwater.

54. Defendant TAP should be subject to an enforcement order or injunction ordering TAP to cease its violations of NPDES Permit TNR050000 and TNR053682.

55. Defendant TAP should be subject to the assessment of civil penalties for these permit violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d) and 1365.

56. For the purpose of assessing the maximum penalty which Defendant TAP is liable, each day that TAP has violated its NPDES Permit constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d), for each day on which it has occurred or will occur after the filing of this Complaint.

**COUNT 3: VIOLATIONS OF THE PRETREATMENT REQUIREMENTS OF THE CLEAN WATER ACT**

57. Paragraphs 1-56 of this Complaint are hereby realleged and incorporated by reference herein.

58. TAP has violated and continues to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging wastewater into the City of Mount Pleasant's POTW without complying with the requirements of 33 U.S.C. § 1317 and the rules promulgated by the U.S. EPA and TDEC to implement the industrial pretreatment program.

59. TAP's has violated and continues to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), as well as Tenn. Code. Ann. § 69-3-125(a)(1)(C), by discharging industrial wastewater into the City of Mount Pleasant's POTW without applying for and obtaining a pretreatment permit authorizing such discharge.

60. Since January of 2010, and including, but not limited to, the dates of January 21, 2010, February 4, 2010, and February 5, 2010, TAP has violated the CWA and rules implementing the industrial pretreatment program by introducing stockpile leachate contaminated with ammonia into the City of Mount Pleasant's POTW, which leachate has and continues to cause Pass Through or Interference with the operation of the POTW, and has caused or contributed, and continues to cause or contribute, to ammonia effluent limit violations of the City of Mount Pleasant's NPDES Permit No. TN0020800.

12

61. Defendant TAP should be subject to an injunction ordering TAP to cease its violations of pretreatment requirements and standards.

62. Defendant TAP should be subject to the assessment of civil penalties for these violations pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d) and 1365.

63. For the purpose of assessing the maximum penalty which Defendant TAP is liable, each instance of Defendant TAP's violation of pretreatment requirements and standards constitutes a separate violation of Section 301(a) of the CWA, pursuant to Section 309(d), 33 U.S.C. § 1319(d), for each day on which it has occurred or will occur after the filing of this Complaint.

**COUNT 4: VIOLATION OF THE RESOURCE CONSERVATION AND RECOVERY ACT BY OPERATION OF AN "OPEN DUMP"**

64. Paragraphs 1-63 of this Complaint are hereby realleged and incorporated by reference herein.

65. Defendant TAP has violated and is violating Section 4005(a) of RCRA, 42 U.S.C. § 6945(a), by maintaining an "open dump" for land disposal of solid waste at the TAP facility, as that term is defined in 42 U.S.C. § 6903(14).

66. Defendant TAP has discharged and is discharging pollutants into surface waters in violation of the requirements of the National Pollutant Discharge Elimination System of the CWA. Specifically, the TAP facility has discharged and is discharging contaminated leachate from the slag waste stockpile located at the TAP facility through discrete conveyances into an unnamed tributary of Quality Creek. This discharge is continuing and has been occurring since at least 1989.

67. Defendant TAP has also contaminated an underground drinking water source beyond the solid waste boundary, *i.e.*, the boundary of the TAP facility.

68. Defendant TAP should be subject to an injunction ordering TAP to cease its operation of an open dump at its facility in violation of RCRA.

69. Defendant TAP should be subject to the assessment of civil penalties for these violations of RCRA pursuant to Sections 3008(g) and 7002(a) of the RCRA, 42 U.S.C. §§ 6928(g) and 6972(a).

70. For the purpose of assessing the maximum penalty which Defendant TAP is liable, each day of Defendant TAP's operation of an open dump constitutes a separate violation of Section 4005(a) of RCRA, pursuant to Section 3008(g), 42 U.S.C. § 6928(g), for each day on which it has occurred or will occur after the filing of this Complaint.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

a. Enter a declaratory judgment that Defendant TAP has violated and is in violation of the CWA, 33 U.S.C. §§ 1311(a) and 1342;

b. Order or Enjoin Defendant TAP to cease the discharge of pollutants from point sources into waters of the United States without a valid NPDES Permit;

c. Order Defendant TAP to comply with all effluent limitations and other terms and conditions of coverage under its NPDES Permit;

d. Enter a declaratory judgment that Defendant TAP has violated and is in violation of the CWA, 33 U.S.C. §§ 1311 and 1317;

14

e. Order or Enjoin Defendant TAP to cease discharge of wastewater into the City of Mt. Pleasant Public Owned Treatment Works in violation of pretreatment requirements and standards;

f. Enter a declaratory judgment that the TAP facility is an "open dump" and that Defendant TAP has violated and is in violation of RCRA, 42 U.S.C. § 6945(a), for the operation of an open dump;

g. Enjoin Defendant TAP from maintaining the TAP facility as an "open dump" in violation of RCRA, 42 U.S.C. § 6945(a);

h. Order Defendant TAP to pay civil penalties of up to thirty-seven thousand five hundred dollars ($37,500) per day for each day of each violation of the CWA set out in this Complaint, pursuant to Sections 309(d) and 505(a) of the CWA, 33 U.S.C. § 1319(d) and 1365(a);

i. Award Plaintiffs their costs, including reasonable attorney and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d);

j. Order Defendant TAP to pay civil penalties of up to thirty-seven thousand five hundred dollars ($37,500) per day for each day of each violation of RCRA set out in this Complaint, pursuant to Sections 3008(g) and 7002(a) of RCRA; 42 U.S.C. §§ 6928(a) and 6972(a);

k. Award Plaintiff their costs, including reasonable attorney and expert witness fees, as authorized by Section 7002(e) of RCRA, 42 U.S.C. § 6972(e); and

l. Grant such other and further relief as the Court deems just and appropriate.

Respectfully submitted, this the 20th day of September, 2010.

_____ E/ G. Davis & J. Whitlock
Gary A. Davis (BPR No. 009766)
James S. Whitlock (N.C. Bar No. 34304)
*Admission Requested Pro Hac Vice*
GARY A. DAVIS & ASSOCIATES
P.O. Box 649
61 North Andrews Avenue
Hot Springs, NC 28743
(828) 622-0044
(828) 622-7610
gadavis@enviroattorney.com
jwhitlock@enviroattorney.com

_____
Alan Stuart Graf (BPR No. 24908)
Alan Stuart Graf, PC
316 Second Rd.
Summertown, TN 38483
(931) 964-3123
(931) 964-3127
alangraf@aracnet.com

**Attorneys for Plaintiffs**